IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

GIBSON GUITAR CORP.　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　) NO. 3:05-0523
　　　　　　　　　　　　　　　　　　　) JUDGE CAMPBELL
ELDERLY INSTRUMENTS, INC.　　　　　)

MEMORANDUM

Pending before the Court is Gibson Guitar Corporation's ("Gibson") Motion to Dismiss Second Amended Counterclaim (Docket No. 86). For the reasons stated herein, Gibson's Motion is GRANTED, and the Second Amended Counterclaim is DISMISSED.

PROCEDURAL HISTORY

Plaintiff Gibson Guitar Corporation filed this action for trademark infringement, false advertising, unfair competition and breach of contract in July of 2005. Docket No. 1. Gibson's Motion for Temporary Restraining Order was denied (Docket No. 5), and the parties entered an Agreed Order Granting Injunction (Docket No.13), in which, among other things, Defendant agreed not to infringe Plaintiff's trade dress or trademarks.

Subsequently, Gibson filed a Second Motion for Preliminary Injunction, which the Court denied. Docket No.71. The Court found no irreparable harm to Plaintiff because Defendant had not been using the trademark/logo and because Defendant represented that it did not intend to use Plaintiff's trademark/logo or hold itself out as an authorized Gibson dealer in the future. Id.

Defendant Elderly Instruments, Inc. ("Elderly") filed a Counterclaim (Docket No. 37) and, ultimately, a Second Amended Counterclaim (Docket No. 84), in which it alleges fraud, wrongful termination of contract, tortious interference with prospective business advantage, negligent

misrepresentation, breach of contract, breach of implied covenant of good faith, and unfair competition by Gibson. The pending Motion is to dismiss this Second Amended Counterclaim.

## MOTIONS TO DISMISS

In considering a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept as true all factual allegations in the complaint. Broyde v Gotham Tower, Inc., 13 F.3d 994, 996 (6th Cir. 1994). The motion should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id.

A motion to dismiss for failure to state a claim upon which relief can be granted must be viewed in the light most favorable to the party opposing the motion. State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc., 856 F.Supp. 1229, 1232 (S.D. Ohio 1994). The purpose of a motion to dismiss for failure to state a claim is to allow the defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).

## FRAUD/NEGLIGENT MISREPRESENTATION

Elderly's Counterclaims for fraud and negligent misrepresentation allege that Gibson made two oral fraudulent or negligent misrepresentations to Elderly in connection with the two agreements between the parties:[1] (1) that Gibson would initiate an aggressive national advertising campaign to promote Elderly Instruments as one of Gibson's few authorized dealers; and (2) that Gibson would not enforce the "exclusive dealer" language in the parties' agreements against Elderly. Elderly

---

[1] The Domestic Retail Distributor Agreement for the Original Acoustic Instruments Division, dated January 15, 2004, is attached to the Second Amended Counterclaim as Exhibit 1. The Domestic Retail Distributor Agreement Standard Terms and Conditions, dated October 5, 2004, is attached to the Second Amended Counterclaim as Exhibit 2.

2

contends that, contrary to these promises, Gibson failed to initiate an aggressive national advertising campaign as promised and attempted to enforce the "exclusive dealer" language of the parties' agreement against Elderly.

Gibson asserts that Elderly's fraud and misrepresentation claims must fail because, even if Gibson had made the alleged oral promises, there could be no reasonable reliance upon those promises, given the parties' written agreements. Both agreements include an "integration clause" which provides that the agreements, signature pages, schedules, exhibits, attachments or terms and conditions included by reference constitute the entire agreement and supersede any and all prior agreements between the parties. Docket No. 87, Ex.1, ¶ 38 and Ex. 2, ¶ 38. The written agreements also provide that Gibson "will not be bound by, and specifically objects to, any term condition, or other provision which is different from or in addition to the provisions of this Agreement . . . unless specifically stated in writing signed by [Gibson]." Docket No. 87, Ex.1, ¶ 1 and Ex. 2, ¶ 1.

Under Tennessee law, the elements of intentional misrepresentation or fraud are (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity; (3) reasonable reliance on the misrepresentation resulting in damages; and (4) the misrepresentation's relation to an existing or past fact. Menuskin v. Williams, 145 F.3d 755, 764 (6th Cir. 1998). Such a claim may also be proven by showing concealment or nondisclosure of a known fact when there is a duty to disclose. Starr Printing Co., Inc. v. Air Jamaica, 45 F.Supp.2d 625, 633 (W.D. Tenn. 1999). To satisfy the intent element of a fraudulent misrepresentation claim, the statement must have been made knowingly, without belief in its truth, or recklessly, careless whether it be true or false. Metropolitan Govt. of Nashville and Davidson County v. McKinney, 852 S.W.2d 233, 238 (Tenn. Ct. App. 1992).

3

Elderly alleges that it was fraudulently induced to sign the two agreements with Gibson. Docket No. 37, ¶¶ 3-5. Fraudulent inducement is recognized in Tennessee as promissory fraud and requires that the misrepresentation be made without the present intention to carry it out. Power & Telephone Supply Co., Inc. v. Suntrust Banks, Inc., ___ F.3d ___, 2006 WL 1328947 at * 5 (6th Cir. May 17, 2006). Neither the failure to in fact keep the promise nor Elderly's subjective impression will demonstrate that there was no present intention to carry out the promise. Id.

The elements of an action for fraudulent inducement to contract are (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; and (5) an injury resulting from the reliance. Lamb v. Megaflight, Inc., 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000). Statements of opinion or intention or puffing or other sales talk are not actionable. McElroy v. Boise Cascade Corp., 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982). Similarly, conjecture or representations concerning future events are not actionable even though they may later prove to be false. Id.

Elderly has alleged that Gibson made an intentional misrepresentation with regard to a material fact, knowing that the representation was false. The Court finds, however, that even accepting the allegations of the Second Amended Counterclaim as true, Elderly has not demonstrated that the alleged misrepresentations related to existing or past facts or were promises made with the present intention not to carry them out. In addition, Elderly has not shown reasonable reliance --- that is, reliance under circumstances manifesting a reasonable right to rely on the statements --- on the alleged misrepresentations.

The specific alleged misrepresentations, that Gibson would initiate an aggressive national advertising campaign to promote Elderly Instruments as one of Gibson's few authorized dealers and that Gibson would not enforce the "exclusive dealer" language in the parties' agreement against Elderly, are forward-looking statements, not existing or past facts. They are statements concerning future events, which are not actionable even though they may later prove to be false.

Furthermore, although reasonable reliance is ordinarily a question of fact for a jury to decide, the undisputed integration clauses in the parties' agreements make any reliance on alleged oral promises by Gibson, under these circumstances, unreasonable as a matter of law. Docket No. 87, Ex.1, ¶ 38 and Ex. 2, ¶ 38; Docket No. 87, Ex.1, ¶ 1 and Ex. 2, ¶ 1.

Under Tennessee law, Elderly cannot attempt to introduce parol proof of representations made in connection with these written agreements unless those matters are not otherwise plainly expressed in the agreements themselves. The parol evidence rule is a rule of substantive law intended to protect the integrity of written contracts. First Tenn. Bank Nat'l Assoc. v. Bad Toys, Inc., 159 S.W.3d 557, 563 (Tenn. Ct. App. 2004). Since courts should not look beyond a written contract when its terms are clear, the parol evidence rule provides that contracting parties cannot use extraneous evidence to alter, vary or qualify the plain meaning of an unambiguous written contract. Id. "The rule appears to be quite all-encompassing." Id. Alleged fraudulent misrepresentations that expressly negate or contradict the written contract are inadmissible. Harry J. Whelchel Co., Inc. v. Ripley Tractor Co., Inc., 900 S.W.2d 691, 693 (Tenn. Ct. App. 1995); Blount v. Jefferson, 1997 WL 106332 at * 3 (Tenn. Ct. App. March 11, 1997).

In this case, Gibson's obligations are contained within the written contracts between the parties. The agreements say nothing about Gibson's conducting an aggressive national advertising

5

campaign. In fact, the agreements provide that Gibson may, in its discretion, prepare certain advertising materials, imposing no such specifically aggressive or national advertising requirement. Docket No. 87, Ex. 1, ¶ 9.5 and Ex. 2, ¶ 9.5. These provisions reflect an intent to give Gibson the final word on all advertising.

In addition, the Original Acoustic Instruments Division Domestic Retail Distributor Agreement provides that Gibson and Elderly agree that "it is in their mutual best interest for Elderly to carry only Gibson's and Epiphone's products (solely as to banjos, dobros, mandolins and accessories) exclusively." Docket No. 87, Ex. 1, ¶ 2. Any alleged oral promise not to enforce that provision of the contract negates or contradicts the written agreement.

For these reasons, Elderly's claim for fraudulent misrepresentation, including promissory fraud, cannot stand. Gibson's Motion to Dismiss Count I (the fraud claim) is GRANTED, and that claim is DISMISSED.

Count III of the Second Amended Counterclaim alleges that Gibson negligently misrepresented false information to Elderly, the same two representations for which Elderly claims fraud.[2] To prevail on a claim of negligent misrepresentation, Elderly must establish that (1) Gibson supplied information to Elderly; (2) the information was false; (3) Gibson did not exercise reasonable care in obtaining or communicating the information; and (4) Elderly justifiably relied on the information. Atkins v. E.F. Kirkpatrick, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991).

The misrepresentation must consist of a statement of a material past or present fact. McElroy, 632 S.W.2d at 130. Thus, statements concerning future events are not actionable even though they may later prove to be false. Id.

---

[2] Therefore, the negligent misrepresentation claim is treated as an alternative claim.

6

For the same reasons stated above as to fraudulent misrepresentations, including promissory fraud, Elderly cannot establish its claim for negligent misrepresentation. Accordingly, Gibson's Motion to Dismiss that claim is GRANTED, and the negligent misrepresentation claim is DISMISSED.

## WRONGFUL TERMINATION/TORTIOUS INTERFERENCE

Elderly contends that Gibson, in notifying Elderly of the alleged breaches of contract (selling "counterfeit" goods and violating the "Exclusivity Clause") on June 21, 2005 (Docket No. 1, Ex. 7), offered Elderly ten days to "cure" the alleged breaches. Elderly asserts that Gibson then concealed, until after that ten-day period had run, its determination that Elderly's attempted cure did not cure the breach. Docket No. 84, ¶¶ 9-12. Elderly claims that if it is found to have failed to cure any breach of the agreements within the ten-day cure period, its failure was the direct result of Gibson's fraudulent concealment. Elderly argues that Gibson's termination of the agreements was without justification, constituting both wrongful termination and tortious interference with prospective business advantage. Id., ¶ 15.

Gibson, on the other hand, claims that the allegations of Elderly in this regard do not constitute a separate cause of action; rather, they are defenses to Gibson's claims concerning the termination of the contracts. Gibson also contends that there can be no claim for fraudulent concealment here because there was no duty to disclose. Liability for non-disclosure can arise only in cases where the person sought to be held responsible had a duty to disclose the facts at issue. Walker v. First State Bank, 849 S.W.2d 337, 341 (Tenn. Ct. App. 1993).

Paragraph 13.1 of the agreements provides that those agreements will terminate automatically, *without a right to cure*, upon any "terminating event," as described therein. One such

7

terminating event is if Elderly threatens public health or harm to Gibson, its affiliates, Trademarks or commercial reputation. Docket No. 87, Ex. 1, ¶ 13.1 and Ex. 2, ¶ 13.1.[3] Thus, when Elderly advertised "counterfeit goods," as alleged and admitted, the automatic termination provision was invoked and the contracts were terminated with no right to cure.

Elderly also claims that it was wrongfully induced to purchase more than $250,000 of Gibson inventory on the belief that Gibson "would continue the 30 year long distributorship agreement." Id., ¶ 16. Elderly asserts that Gibson deliberately injured Elderly's ability to sell existing inventory by seeking injunctions to limit the ability of Elderly to advertise its available inventory. Id.

As to any expectation of continued agreements, because the contracts were (by their own terms) good for only one year and expressly stated there was no expectation of renewal (Docket No. 87, Ex. A, ¶ 11 and Ex. B, ¶ 11), Elderly cannot claim fraud because of a belief that clearly contradicts the express terms of the contracts. In addition, any claim that Gibson wrongfully sought injunctions is defeated by the fact that Elderly consented to the first injunction and the Court denied the request for the second, relying upon representations of Elderly's counsel that Elderly was no longer using the trademark. See Docket No. 71.

For these reasons, Gibson's Motion to Dismiss Elderly's wrongful termination claim is GRANTED, and that claim is DISMISSED.

Elderly also asserts that the above-described wrongful conduct of Gibson constitutes tortious interference with prospective business advantage, also known as tortious interference with business relations. To establish this claim, Elderly must show (1) an existing business relationship with

---

[3] The provision which includes a right to cure applies only except "as otherwise stated herein." Docket No. 87, Ex. 1, ¶ 13.2 and Ex. 2, ¶ 13.2.

8

specific third parties or a prospective relationship with an identifiable class of third persons; (2) Gibson's knowledge of that relationship and not a mere awareness of Elderly's business dealings with others in general; (3) Gibson's intent to cause the breach or termination of the business relationship; (4) Gibson's improper motive or improper means; and (5) damages resulting from the tortious interference. Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002); see also Matthews v. Storgion, 2006 WL 988792 at * 4 (6th Cir. April 17, 2006). Although an all-encompassing definition of "improper" is neither possible nor helpful, the Tennessee Supreme Court requires that Elderly demonstrate that Gibson's predominant purpose was to injure Elderly. Trau-Med at n. 5; Bolton v. Morgan, 2006 WL 840422 at * 5 (W.D. Tenn. March 29, 2006).

Here, Elderly has not identified any existing business relationship with a specific third party with which Gibson has allegedly interfered. Elderly has not identified any specific damages resulting from the alleged interference. Finally, Elderly has not set forth sufficient facts to show that Gibson's predominant purpose in terminating the contracts was to injure Elderly. See Bolton at * 5.

For these reasons, Gibson's Motion to Dismiss Elderly's tortious interference claim is GRANTED, and that claim is DISMISSED.

### BREACH OF CONTRACT/IMPLIED DUTY OF GOOD FAITH

Elderly bases its claim for breach of contract on Gibson's decision to terminate the parties' contracts despite Elderly's alleged "curing" within the ten-day cure period. As noted above, however, the agreements between the parties provided for automatic termination, with no right to cure, upon certain events, including the threat of harm to Gibson's trademark and commercial

9

reputation. These portions of the agreements gave Gibson the right to automatic termination based upon certain acts by Elderly. Docket No. 87, Ex. 1, ¶ 13.1 and Ex. 2, ¶ 13.1.[4] Automatic termination of the agreements, with no right of cure, upon Elderly's committing such prohibited acts was specifically provided for in the contracts.

Tennessee common law imposes a duty of good faith in the performance of contracts in this state. Wallace v. National Bank of Commerce, 938 S.W.2d 684, 686 (Tenn. 1996). Performance of a contract according to its terms, however, cannot be characterized as bad faith. Id. at 687.

The Court finds that Elderly has failed to demonstrate any contract provision which was breached by Gibson. Accordingly, Gibson's Motion to Dismiss Elderly's breach of contract and breach of implied duty of good faith claims is GRANTED, and those claims are DISMISSED.

## UNFAIR COMPETITION

Elderly claims, in the alternative, that if the two agreements automatically terminated, then Gibson is guilty of unfair competition. Elderly argues that after the automatic termination, Gibson continued to advertise Elderly as a "Custom Super Dealer" of Gibson on its website, actually confusing or deceiving the public as to the affiliation or association between Gibson and Elderly.

To prove unfair competition in Tennessee, Elderly must show that (1) Gibson engaged in conduct which "passed off" its organization or services as that of Elderly; (2) in engaging in such conduct, Gibson acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of the organization. Sovereign Order of Saint John of Jerusalem,

---

[4] The provisions for "cause termination," which allow for cure, do not apply to situations covered by the automatic termination provisions. Docket No. 87, Ex. 1, ¶ 13.2 and Ex. 2, ¶ 13.2.

Inc. v. Grady, 119 F.3d 1236, 1243 (6th Cir. 1997). Tennessee's law of unfair competition differs significantly from the federal law of unfair competition in that Tennessee's law requires a showing of "actual confusion," while federal law requires only a showing of a "likelihood of confusion." Id.

Elderly admits that it still has $250,000 worth of Gibson inventory which, under the Court's prior rulings, it may continue to sell. It is unclear why Elderly would claim it had to turn away customers for this Gibson inventory. Elderly can, in fact, still sell these Gibson products. In addition, Elderly has failed to show actual customer confusion. The Court finds that Elderly has failed to demonstrate any unfair competition by Gibson and, in any event, has failed to show any injury as a proximate result of Gibson's alleged use of Elderly's name on the website. Accordingly, Gibson's Motion to Dismiss the unfair competition claim is GRANTED, and that claim is DISMISSED.

## CONCLUSION

For all the above reasons, Gibson's Motion to Dismiss (Docket No. 86) is GRANTED, and the Second Amended Counterclaim is DISMISSED.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

11